UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO:

DAVID EDWARDS,
Plaintiff,


 v.

THE WELLNESS COMPANY a/k/a
TWC 2022, INC.,
Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, DAVID EDWARDS ("Plaintiff" or "Mr. Edwards") and files this Complaint for Damages against THE WELLNESS COMPANY a/k/a TWC 2022, INC. ("Defendant" or "TWC"), and in support thereof states the following:

### INTRODUCTION

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* ("FCRA"), and 42 U.S.C. § 1981 ("Section 1981") to correct unlawful employment practices based on race discrimination and retaliation.

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because this action arises under Title VII, 42 U.S.C. § 1981, and

the laws providing for the protection of civil rights; the Court has supplemental jurisdiction over the Florida Civil Rights Act ("FCRA") claims under 28 U.S.C. § 1367.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices arising under Title VII and Section 1981 were committed in Florida, and Plaintiff worked in this district and would have continued to work in this district but for Defendant's unlawful employment practices.

3. Venue is also proper in this district because Plaintiff resides in Pembroke Pines, Florida, which is located within the Southern District of Florida, and Defendant conducts substantial business activities within this district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4. On August 3, 2024, Plaintiff timely dual-filed a charge of discrimination alleging race discrimination and retaliation (EEOC Charge No. 510-2024-09967) with the Equal Employment Opportunity Commission ("EEOC") Miami District Office and the Florida Commission on Human Relations ("FCHR").

5. **More than 180 days** have elapsed since the filing of Plaintiff's charge with the EEOC and FCHR and neither has not issued a determination. Plaintiff

has therefore exhausted administrative remedies under Title VII and the FCRA.

6. All conditions precedent to bringing this action have occurred, been performed, or are otherwise satisfied.

## PARTIES

7. Plaintiff David Edwards is a Black man who is domiciled in Pembroke Pines, Florida.

8. Plaintiff is a citizen of the United States and a resident of the State of Florida. Plaintiff submits himself to the jurisdiction of this Court.

9. Plaintiff, at all times relevant hereto, was an employee as defined by Title VII.

10. Defendant The Wellness Company a/k/a TWC 2022, Inc. is a Delaware corporation with its principal place of business located at 433 Plaza Real, Suite 275, Boca Raton, Florida 33432. At all times relevant hereto, Defendant was an employer as defined by Title VII that conducted business in Florida and employed fifteen (15) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

11.  At all relevant times, Defendant was an employer within the meaning of the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq.

**STATEMENT OF FACTS**

12. On July 10, 2023, Defendant hired Plaintiff David Edwards as a Customer Service Representative at an hourly rate of $20.00 per hour with a work schedule of 8 am to 5 pm, Monday through Friday, minimum 40 hours per week.

13. Edwards is a Black male who performed his duties with exceptional skill and dedication from the outset of his employment.

14.   Due to his outstanding performance, Defendant promoted Edwards to Team Lead within approximately three months of his hire date, on October 26, 2023.

15.  As Team Lead, Edwards' responsibilities included managing escalations inbox, handling marketplace issues, resolving shipping problems, processing charge backs for marketplace, conducting new hire training, and managing his own email queue.

16.  In recognition of his excellent performance, Edwards received a Christmas bonus in December 2023.

17. During his employment, Edwards observed a disturbing pattern of racial discrimination whereby Black employees were systematically terminated and replaced with White employees.

18. In October 2023, Stacy (Unknown Last name), a Black hiring manager/supervisor, was abruptly terminated and replaced by Haley Lewer, a White employee who became Edwards' direct supervisor.

19. Edwards witnessed the termination of Kewandra, a Black employee, who was replaced by Maddie Lewer, a White employee who is Haley Lewer's sister-in-law.

20. Edwards also observed the termination of Kewandra and her sister Ebony, both Black employees, shortly after they returned from approved vacation time.

21. At least two other Black employees were terminated and specifically replaced by White employees during Edwards' tenure.

22. Edwards further observed that Danielle, a Black employee who was described as "exceptional," was terminated allegedly for performance issues.

23. On October 24, 2023, Edwards engaged in protected activity by reporting to his supervisor Haley Lewer that "everyone that looks like me is disappearing," expressing his concern about the pattern of racial discrimination he was witnessing.

24. In response to Edwards' complaint, Supervisor Lewer told Edwards he was a "good worker" who "had nothing to worry about" but notably did not refute Edwards' claim of discrimination.

25. Edwards expressed concerns about his job security, stating "I don't like coming to work feeling like who's next."

26. Following Edwards' protected activity, he began to experience retaliation and a hostile work environment, including closer scrutiny of his performance and differential treatment compared to his White counterparts.

27. Edwards was held to a higher standard, monitored more closely, and assigned more work than Maddie Lewer, a White Team Lead and Haley Lewer's sister-in-law, who was treated more favorably.

28. On April 19, 2024, Defendant terminated his employment without providing any reason, stating only that employment was at-will.

29. Edwards' observations of racial discrimination were corroborated by multiple witnesses, including Anjanee Seepersad and Felisha Barrett, both former employees who witnessed the systematic termination of Black employees and their replacement with White employees.

30. Edwards and other employees documented Lewer's direct expressions of racial bias, including her comments about "only hire the ones that speak good English" when referring to Jamaican workers, demonstrating explicit racial animus in hiring decisions.

31. The hostile work environment extended beyond terminations to include differential treatment in workplace communications, where Black employees' questions in customer service chat were ignored while non-Black employees received prompt responses.

32. Despite TWC's post-termination claims of performance issues, Edwards received no formal performance evaluations, coaching sessions, or progressive discipline during his employment, and his customer chat reviews were consistently satisfactory or above satisfactory.

33. The temporal proximity between Edwards' October 24, 2023 discrimination complaint and his April 19, 2024 termination, combined with the lack of

documented performance issues prior to his protected activity, demonstrates that his termination was retaliatory rather than performance-based.

**COUNT I**
**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

34. Plaintiff incorporates by reference and realleges paragraphs 1–33 as if fully set forth herein.

35. Plaintiff is a member of a protected class under Title VII as a Black male.

36. Plaintiff was qualified for his position as Customer Service Representative and Team Lead, as evidenced by his promotion within three months of hire and receipt of a Christmas bonus for exceptional performance.

37. Plaintiff suffered adverse employment actions, including termination on April 19, 2024.

38. Similarly situated employees not of Plaintiff's race, including White employees such as Maddie Lewer and other White team leads, were treated more favorably and were not subjected to the same level of scrutiny, workload, or adverse employment actions.

39. Defendant's discriminatory actions were based on Plaintiff's race, as evidenced by the systematic pattern of terminating Black employees and

replacing them with White employees, Supervisor Lewer's racist comments regarding hiring practices, and the disparate treatment of Black employees in workplace communications and work assignments.

40. As a direct and proximate result of Defendant's intentional race discrimination, Plaintiff has suffered damages including lost wages, benefits, and other job-related economic benefits in an amount to be established at trial, but not less than $46,000 in lost wages.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

41. Plaintiff incorporates by reference and realleges paragraphs 1–33 as if fully set forth herein.

42. Plaintiff is a member of a protected class under the FCRA as a Black male.

43. Plaintiff was qualified for his position and performed his duties satisfactorily, as demonstrated by his promotion to Team Lead and consistent productivity metrics.

44. Similarly situated employees not of Plaintiff's race, including White employees such as Maddie Lewer and other White team leads, were treated more favorably and were not subjected to the same level of scrutiny, workload, or adverse employment actions.

45. Plaintiff suffered adverse employment actions, including termination and disparate treatment, under circumstances giving rise to an inference of discrimination based on his race.

46. Defendant's discriminatory conduct violated the FCRA by engaging in disparate treatment based on Plaintiff's race, as evidenced by the systematic termination of Black employees, racist hiring comments, and differential treatment in the workplace.

47. As a direct and proximate result of Defendant's race discrimination in violation of the FCRA, Plaintiff has suffered damages including lost wages, benefits, emotional distress, and other compensatory damages in an amount to be established at trial.

## COUNT III
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

48. Plaintiff incorporates by reference and realleges paragraphs 1–33 as if fully set forth herein.

49. Section 1981 provides that all persons shall have the same right to make and enforce contracts as is enjoyed by white citizens.

50. Plaintiff's employment relationship with Defendant constituted a contractual relationship within the meaning of Section 1981.

51. Defendant intentionally discriminated against Plaintiff on the basis of his race by subjecting him to different terms and conditions of employment and ultimately terminating his employment.

52. Defendant's discriminatory actions interfered with Plaintiff's ability to make and enjoy his employment contract on the same terms as White employees.

53. Defendant's conduct was intentional, willful, and done with reckless disregard for Plaintiff's rights under Section 1981.

54. As a direct and proximate result of Defendant's race discrimination in violation of Section 1981, Plaintiff has suffered damages including lost wages, benefits, emotional distress, and other compensatory damages in an amount to be established at trial.

55. Plaintiff's race was a but-for cause of the adverse actions challenged herein, including his termination and disparate terms and conditions of employment.

## COUNT IV
## RETALIATION IN VIOLATION OF TITLE VII

56. Plaintiff incorporates by reference and realleges paragraphs 1–33 as if fully set forth herein.

57. On October 24, 2023, Plaintiff engaged in protected activity under Title VII by complaining to his supervisor Haley Lewer that "everyone that looks like me is disappearing," thereby opposing discriminatory practices he reasonably believed violated Title VII.

58. Plaintiff's complaint constituted protected activity under Title VII.

59. Defendant had actual knowledge of Plaintiff's protected activity through Supervisor Lewer.

60. Following Plaintiff's protected activity, Defendant subjected him to materially adverse actions, including increased scrutiny, disparate treatment, and ultimate termination on April 19, 2024.

61. The temporal proximity between Plaintiff's October 24, 2023 complaint and his April 19, 2024 termination, combined with the lack of documented performance issues prior to his protected activity, establishes a causal connection between the protected activity and the adverse employment actions.

62. As a direct and proximate result of Defendant's retaliation in violation of Title VII, Plaintiff has suffered damages including lost wages, benefits, and other job-related economic benefits in an amount to be established at trial.

**COUNT V**
**RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**

63. Plaintiff incorporates by reference and realleges paragraphs 1–33 as if fully set forth herein.

64. Plaintiff engaged in protected activity under the FCRA by opposing what he reasonably believed to be unlawful discriminatory practices.

65. Defendant had knowledge of Plaintiff's protected activity.

66. Defendant took materially adverse actions against Plaintiff, including subjecting him to a hostile work environment, disparate treatment, and termination.

67. A causal relationship exists between Plaintiff's protected activity and the adverse employment actions taken by Defendant.

68. Defendant's retaliatory conduct violated the FCRA and was done intentionally and with malice.

69. As a direct and proximate result of Defendant's retaliation in violation of the FCRA, Plaintiff has suffered damages including lost wages, benefits, emotional distress, and other compensatory damages in an amount to be established at trial.

## COUNT VI
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

70. Plaintiff incorporates by reference and realleges paragraphs 1–33 as if fully set forth herein.

71. Plaintiff engaged in protected activity by opposing racial discrimination in the workplace.

72. Defendant retaliated against Plaintiff because of his opposition to racial discrimination, thereby interfering with his contractual rights under Section 1981.

73. Defendant's retaliatory actions materially affected the terms and conditions of Plaintiff's employment and ultimately resulted in his termination.

74. Defendant's retaliation was intentional and done with the purpose of punishing Plaintiff for his opposition to racial discrimination.

75. As a direct and proximate result of Defendant's retaliation in violation of Section 1981, Plaintiff has suffered damages including lost wages, benefits,

emotional distress, and other compensatory damages in an amount to be established at trial.

76. Plaintiff's protected activity was a but-for cause of the retaliatory actions challenged herein, including the increased scrutiny and termination.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the following relief be granted:

a.  Issue a declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured under Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and 42 U.S.C. § 1981;

b.  Grant to Plaintiff judgment in his favor and against Defendant under all counts of this Complaint;

c.  Order Defendant to make Plaintiff whole by providing for him out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with

interest thereon, all in an amount to be proven at trial but not less than $46,000;

d.   Order reinstatement or, in the alternative, front pay;

e.   Order Defendant to compensate Plaintiff for mental and emotional damages suffered as a result of Defendant's unlawful and discriminatory acts, including but not limited to $25,000 in emotional distress damages;

f.   Grant to Plaintiff punitive damages for Defendant's willful and intentional violations of Title VII, the Florida Civil Rights Act, and Section 1981;

g.   Order Defendant to remove any negative performance documentation from Plaintiff's personnel file that was created in retaliation for his protected activity;

h.   Order Defendant to provide a neutral reference for Plaintiff for future employment inquiries;

i.   Grant to Plaintiff his reasonable attorney's fees and reasonable expert witness fees together with any and all other costs associated with this action as provided by Title VII, the Florida Civil Rights Act, and Section 1981;

j.   Grant to Plaintiff a jury trial on all issues so triable;

k.   Grant such additional monetary and equitable relief as the Court deems proper and just;

l.   Award pre- and post-judgment interest as permitted by law; and

m. Order Defendant to implement anti-discrimination and anti-retaliation policy revisions, training, and EEO postings, and to maintain records demonstrating compliance.

Dated: November 21, 2025

Respectfully submitted

*/s/Denise Mutamba*
Denise Mutamba, Esq.
MDM Legal, PLLC
Florida Bar No. 111727
7754 Okeechobee Blvd
#4-3068
West Palm Beach, FL 33411
Office: (561) 872-3601
Email: denise@mdmattorneys.com
*Counsel for Plaintiff*